COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia


MICAH LASALLE SMITH

v.      Record No. 1378-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
OCTOBER 25, 2022


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
appellant.

Maureen E. Mshar, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant, Micah Lasalle Smith, appeals his convictions in the Circuit Court of the City of

Richmond ("trial court") for one count of aggravated malicious wounding, in violation of Code

§ 18.2-51.2, and one count of use of a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1.  Smith asserts that the evidence was insufficient to prove he acted with the intent to

maim, disfigure, disable, or kill, or that his actions were malicious.  Finding no error in the trial

court's ruling, we affirm.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).  Accordingly,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn therefrom. *Id.* at 473.

Donald Jameson, a painting contractor, was working at a home on Avondale Avenue in the City of Richmond. Jameson's white van and a work trailer were parked in front of the house. Jameson was outside "doing some scraping" on the side of the house when he noticed someone wearing a white, long-sleeved sweatshirt walk between the van and the trailer. When the person did not reappear, Jameson approached his van and saw that the driver's side door was open. Jameson observed the same individual sitting in the driver's seat of the van. The individual was holding a gun in his right hand and rummaging through Jameson's things. As Jameson peered into the van, he heard the person say, "Stop, turn around and run." Then "the lights went out." Jameson was shot in the left jaw and fell to the ground. He did not see the person's face or hear any loud noises, nor did he engage in any struggle with the shooter. The next thing he remembered was waking up in the hospital with a shattered jaw and an injured spleen.

Kirk O'Brien was in his art studio on the second floor of his home on Avondale Avenue when he observed a young man wearing a white hooded sweatshirt walk by his house. A "couple moments" later, O'Brien heard a gunshot. O'Brien then saw the same individual running past his house in the opposite direction carrying a gun. As he ran, the individual's hood "very briefly fell down." O'Brien grabbed his phone and ran outside, where he discovered Jameson lying on the ground in a pool of blood.

Jessica Bourne, a forensic investigator for the Richmond Police Department, arrived at the scene. Bourne found blood stains on the driver's side door of Jameson's van and on the street where he laid bleeding. Bourne also observed Jameson's wallet containing cash and credit cards strewn around on the ground. She found a bullet on the ground outside the van and a 9mm cartridge

case on the floor inside the van.  Bourne also recovered a cell phone from inside the van that she learned did not belong to Jameson.

Richmond Police Detective Patrick Ripley identified Smith as a suspect after learning that the cell phone recovered at the scene belonged to him.  After Smith was arrested, Detective Ripley interviewed him.  Smith denied owning a white hoodie until Ripley showed him a mugshot of a recent arrest for an unrelated offense in which Smith was wearing a white hooded sweatshirt.  Smith also told Ripley that he sold his cell phone to a "crackhead" a couple of months prior to the shooting.  However, a forensic report showed that Smith was using his phone in the days leading up to the incident.  Despite this, Smith denied any involvement in the shooting and claimed he did not know how his phone ended up in Jameson's van.  At the end of the interview, Ripley collected Smith's sneakers and obtained a buccal swab.

Bourne tested the sneakers for blood stains before sending them to the Department of Forensic Science for further analysis.  Forensic scientist Jonathan Forsberg lifted a blood stain from Smith's shoe to test it for DNA.  Forsberg concluded that Jameson could not be eliminated as a major contributor to the blood stain on Smith's shoe.

After the Commonwealth rested its case, Smith moved to strike the evidence as insufficient, arguing that the evidence failed to prove he was the shooter, or, if he was the shooter, that he acted maliciously, with the intent to maim, disfigure, disable, or kill Jameson.  The trial court denied the motion to strike.

Smith then testified that on the day of the offense he was "joyriding" with some friends and decided to go "car-hopping."[1]  When it was Smith's turn, one of his friends handed him a gun as he got out of the car.  Smith put the gun in his right pants pocket and approached a van.  He entered the

[1] Smith explained that "car-hopping" means "[j]umping in other cars" in order "[t]o take, like, steal money."

- 3 -

vehicle and "was searching around," when he felt someone approach. Smith explained that he was getting out of the van when "somebody kind of stopped [him] from getting out" and grabbed him. He leaned back as the person snatched the wallet from his hands. Smith "got scared," so he "pulled the gun out," pointed it, and said, "[b]ack up, let me go." Instead of letting him go, Smith said the person "tried to grab the gun and the gun went off." Smith panicked, jumped out of the van, and ran away. Smith testified that his finger was not on the trigger and he did not intend for it to happen. He insisted "it was an accident." He did not seek help for Jameson. Smith acknowledged that he lied to Detective Ripley about what had happened.

After Smith testified, he renewed his motion to strike. He no longer contested that he was the shooter, but he again argued that the evidence failed to prove he maliciously and intentionally shot Jameson. He argued the shooting was an accident. The trial court disagreed and denied his motion to strike. The trial court convicted Smith of aggravated malicious wounding and use of a firearm in the commission of that offense. This appeal followed.

II. ANALYSIS

A. *Standard of Review*

When reviewing the sufficiency of the evidence, we apply a deferential standard of review, and "the decision of '[t]he lower court will be reversed only if that court's judgment is plainly wrong or without evidence to support it.'" *Otey v. Commonwealth*, 71 Va. App. 792, 797 (2020) (alteration in original) (quoting *Cartagena v. Commonwealth*, 68 Va. App. 202, 207 (2017)). "In reviewing the court's verdict, an appellate court 'does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 501 (2020) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "[T]he relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a

- 4 -

reasonable doubt." *Otey*, 71 Va. App. at 797 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).

  B. *The evidence was sufficient to establish the shooting was done with malice and the intent to maim, disfigure, disable, or kill.*

  Smith claims that the shooting was accidental and, thus, that the evidence failed to prove he acted with malice and the requisite intent to maim, disfigure, disable, or kill.

  "If any person maliciously shoots, stabs, cuts or wounds any other person . . . with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment." Code § 18.2-51.2(A). Smith does not dispute the fact that he shot Jameson, nor does he question the permanent and severe nature of Jameson's injuries. Smith merely contends that the shooting was accidental and, therefore, not intentional or malicious.

  "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (alteration in original) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)). Malice inferred from acts and conduct "encapsulates 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 288 (1984) (Poff, J., concurring)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "Malice may also 'be inferred "from the deliberate use of a deadly weapon."'" *Id.* (quoting *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996)).

Additionally, to be guilty of malicious wounding, a person must also intend to "maim, disfigure, disable or kill." Code § 18.2-51.2(A). "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). As with malice, "[t]he state of mind of an alleged offender may be shown by his acts and conduct." *Id.* (quoting *Burton*, 281 Va. at 627). Moreover, the factfinder may "infer that every person intends the natural, probable consequences of his or her actions." *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011). Thus, "[i]t is proper for a court to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." *Burkeen*, 286 Va. at 260-61.

As a starting point, the record does not support Smith's assertion that the shooting was an accident. "It is true that a factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016) (quoting *Dixon v. Commonwealth*, 162 Va. 798, 803 (1934)). "The choice becomes arbitrary, however only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Id.* "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Smith does not dispute that he entered Jameson's van, armed with a gun, and began rifling through Jameson's property. He also does not deny that Jameson approached the van and caught him in the act of stealing. Irrefutably, during the ensuing few moments, Jameson was shot in the

jaw and fell to the ground unconscious. Smith fled the scene without rendering assistance, and he conceded that he lied to Ripley about his involvement in the shooting. Smith's version of events differs from Jameson's only on two points: whether he held the gun in his hand or pulled it from his pocket and whether Jameson caused the gunfire by grabbing the gun, which then "went off" on its own. The first difference is immaterial, and the second is not believable.

First, assuming *arguendo* that the gun was in Smith's pocket, rather than his hand, when Jameson approached the van, Smith had no right to use it to avoid a confrontation or in defense of his own criminal behavior. Even by his own evidence, Smith brandished the gun and created the resulting risk. Second, the evidence failed to support Smith's assertion that the gun accidentally "went off." Indeed, Jameson denied struggling with Smith or even speaking to him before "the lights went out." Rather, Jameson suffered an immediate gunshot wound directly to his jaw as he peered into his van to look at Smith. Because the trial court had "the unique opportunity to observe the demeanor of the witnesses as they testif[ied]," *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)), we will not disturb the trial court's acceptance of Jameson's version of events over Smith's claims. It was within the province of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Kelly v. Commonwealth*, 41 Va. App. 250, 257-58 (2003) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Moreover, as factfinder, the trial court "was entitled to infer that [Smith] was lying to conceal his guilt," especially in light of his repeated lies to Detective Ripley and his attempts to cover up his involvement in the crimes.[2] *Commonwealth v. Duncan*, 267 Va. 377, 385 (2004). Because Smith's

---

[2] Shortly after the incident, the gun was found in the presence of an unrelated person in a different jurisdiction. The record does not reveal how that other person received the firearm or his relationship to Smith, but a reasonable inference is that Smith got rid of the weapon. Also, prior to giving Ripley his shoes, Smith tried to wipe them on the carpet, presumably to clean away any residual blood stains.

claims did not render Jameson's testimony implausible, the trial court was not required to accept Smith's hypothesis of innocence. The record supports the trial court's conclusion that the shooting was not an accident.

With Smith's hypothesis of innocence appropriately rejected, the evidence viewed in the light most favorable to the Commonwealth proved that Smith acted maliciously and with the requisite intent to maim, disfigure, disable, or kill. Smith, armed with a weapon, entered Jameson's van to steal. Jameson approached the van as Smith rummaged through his property and saw that Smith was holding a gun. Jameson heard Smith say, "Stop, turn around and run." Peering inside, Jameson was "just getting to see [Smith's] face" when "the lights went out." Smith shot Jameson in the face. He did not stop to render assistance or call for help and, instead, ran away. Smith later told numerous lies to cover up his involvement in the offenses.

From the totality of this evidence, any rational factfinder could conclude that Smith's actions were malicious. The factfinder was permitted to infer malice from Smith's deliberate use of a firearm. *Palmer*, 71 Va. App. at 237. Furthermore, the act of pointing a gun at Jameson's face and firing, without provocation, proved that Smith's conduct was willful and wanton, heedless of the foreseeable consequences, and a clear display of the reckless disregard for human life. *See Watson-Scott*, 298 Va. at 256. Smith's flight from the scene is also indicative of his guilt, suggesting a complete lack of concern for his victim who laid on the ground in a pool of blood. *See Murray v. Commonwealth*, 71 Va. App. 449, 461 (2020) (finding appellant's flight from the scene evinced consciousness of her guilt).

Additionally, Smith caused the situation by unlawfully entering Jameson's van with the stated purpose to steal his property and then by pointing his gun at Jameson's face when Jameson did not leave. Because a person intends the natural and probable consequences of his acts, it was

reasonable to conclude that Smith intended to maim, disfigure, disable, or kill Jameson when he pointed a gun at him and pulled the trigger.

The trial court did not err in rejecting Smith's hypothesis of innocence as unsupported by the evidence. Jameson's unimpeached testimony, together with Smith's actions and subsequent lies, sufficiently dispelled any notion that this shooting was an accident. The evidence was sufficient to prove that Smith maliciously shot Jameson with the intent to maim, disfigure, disable, or kill him. Because the trial court's ruling is not plainly wrong or without evidence to support it, we will not disturb it on appeal.

### III. CONCLUSION

For the foregoing reasons, we affirm Smith's convictions.

*Affirmed.*